

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

            **Respondent,**

v.

TIMOTHY LIBERTUS,

            **Appellant.**

**WD78288**

**OPINION FILED:**

**May 24, 2016**

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Larry D. Harman, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., Thomas H. Newton, and James Edward Welsh, JJ.**

Timothy Libertus appeals his convictions and sentences, following a jury trial, for

forcible rape, forcible sodomy, and unlawful use of a weapon, for which he was sentenced to two

consecutive 100-year prison sentences and one concurrent three-year sentence, respectively. We

affirm, but we are compelled to remand for resentencing because Libertus was improperly found

to be a dangerous offender and sentenced as such.

## Background

We view the evidence in the light most favorable to the verdict. *State v. Taylor*, 298

S.W.3d 482, 491 (Mo. banc 2009). The evidence at trial showed that, after having argued with

his wife, D.L., all weekend, Libertus came home from work, mid-shift, on Monday, June 24,

2013, to continue the quarrel. When he got home, the two argued, and, according to D.L., the situation "escalated." Libertus returned to work, but continued to send angry texts.

When Libertus arrived home after work, he told D.L. that he wanted to work things out, but she rebuffed him, and he became enraged. Libertus went and got a rifle, which he pointed at D.L.'s face and threatened to "blow" her face off. She pushed the barrel of the rifle away and then tried to get past him. Libertus shoved D.L. into a bookcase, causing her to hit against a wall and fall to the floor. D.L. got up and ran into their bedroom, but Libertus followed her. He stood between her and the door and would not let her out of the room. She jumped across the bed to try to get out the window, but she could not get the window open. Libertus pulled her to the floor and got on top of her. He put his arm around her throat and choked her until she passed out.

When D.L. awoke, Libertus said that he was not going to rape her and just wanted to talk. He then took her clothes off, ripping her bra off, and gave her "cooler" clothes to put on. Libertus tried to lay D.L. down on the bed, but she said that she could not breathe and needed to sit up. He said, "I'm not going to rape you, you stupid bitch." Libertus stormed out of the room. He then yelled that she wanted him to hit her and to rape her. He came back, threw her on the bed, and started taking her clothes off. When she tried to fight him, he threatened to break her jaw and kill her and her whole family. Libertus first raped her vaginally and then sodomized her anally. He did both repeatedly. While he was raping her, he held her down by the throat and choked her. While he was sodomizing her, he held her down by her hair and punched her in the legs and buttocks. He also hit her in the head and her vision became "blurry."

Libertus forced D.L. to give him oral sex, even though he had just sodomized her. He then announced that he wanted to go get some alcohol. He gave D.L. clothes to put on so she could go with him. He said that he "wasn't done with [her] yet" and graphically threatened her

2

with other vile acts. Libertus left the room, and D.L. got dressed. When she came out, she saw her cell phone, grabbed it, and called 911 as she ran from the house. She hid in a neighbor's backyard while talking to the 911 operator.

Another neighbor saw D.L. as she ran out of the house screaming. She saw that D.L.'s clothes were open, and she was holding onto herself. The neighbor then saw Libertus come outside yelling at D.L. and holding a handgun. Libertus "froze" when he saw the neighbor, and he dropped the handgun behind his back. Libertus then turned and went back into his house. He came back out with a long gun, got into his car, and sped off, swerving in and out of the yards.

Libertus drove to the house of Christopher Hufford, who noticed that Libertus was angry, hostile, and nervous. Libertus told Hufford that he had "raped the bitch" and held a weapon to her head (referring to D.L.). Libertus asked Hufford to hide the rifle, but Hufford refused. As Hufford went back inside, he saw Libertus reach into his van. Hufford later found Libertus's rifle in his van. He reported it to the police, and the police recovered the rifle.

In the meantime, the police arrived and found D.L. crying, shaking, and visibly afraid. They took a statement from her and also from one of the neighbors. In the house, the police found evidence that corroborated what D.L. told them. D.L. then went to a hospital where she was examined by a forensic nurse examiner, who found areas of bruising, abrasions, lacerations, redness, and burst blood vessels on D.L.'s neck, shoulders, knee, and leg. The nurse also found redness, lacerations, and other evidence consistent with trauma around D.L.'s vagina and rectum.

The State charged Timothy Libertus with forcible rape (§ 566.030, RSMo[1]), forcible sodomy (§ 566.060), and unlawful use of a weapon (§571.030). At a pre-trial hearing, the circuit court found that Libertus is a prior offender, as defined by section 558.016.

---

[1]Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2012 Cum. Supp.

3

The cause was tried before a jury in November 2014, and the jury found Libertus guilty as charged. Prior to sentencing, the court found Libertus to be a "dangerous offender," pursuant to section 558.016.4. The court sentenced him to consecutive terms of 100 years each for forcible rape and forcible sodomy and to a concurrent three-year term for the weapons charge.

**Standard of Review-Plain Error**

Libertus concedes that he failed to preserve any of his three claims on appeal and, thus, requests plain error review. Rule 30.20 authorizes this Court, in its discretion, to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id*. (citation and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id*. at 607-08.

4

**Point I**

Libertus first contends that the circuit court plainly erred in sentencing him to 100-year prison terms for forcible rape and forcible sodomy because the maximum range of punishment for a "dangerous offender" convicted of those unclassified felonies is that of a class A felony, which is ten years to thirty years or life. He claims that this error created a manifest injustice because he is being required to serve a longer sentence than is authorized by law.

Section 558.016.4 defines a "dangerous offender" as one who:

(1) Is being sentenced for a felony during the commission of which he knowingly . . . endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and

(2) Has pleaded guilty to or has been found guilty of a class A or B felony or a dangerous felony.

For purposes of applying the dangerous offender provisions to an *unclassified* felony, if the authorized penalty for the felony includes life imprisonment, it is classified as a class A felony. § 557.021.3(1)(a). Both forcible rape and forcible sodomy are *unclassified* felonies carrying a range of punishment that includes life imprisonment. §§ 566.030.2 &.060.2. Thus, for purposes of the dangerous offender statute, both crimes are considered class A felonies. The maximum authorized sentence for a class A felony is life imprisonment (as opposed to the 100-year sentences imposed here).[2] § 558.011.1(1).

The State concedes this point (which, ironically, in this case, would work to Libertus's advantage).[3] The State claims, however, that the circuit court lacked the authority to find

---

[2]The significance of this is that, pursuant to section 558.019.4, for purposes of determining a minimum prison term, a life sentence is calculated to be thirty years, whereas any sentence over seventy-five years is calculated to be seventy-five years.

[3]In *State v. Davis*, this Court noted the irony in the fact that the defendant's persistent offender status "necessitate[d]" granting the relief of a reduced sentence on his unclassified felony of rape. 867 S.W.2d 539, 542-43 (Mo. App. 1993).

5

Libertus a "dangerous offender," because the statutorily prescribed procedures for such a finding were not properly observed.[4]  Section 558.021 provides, in relevant part:

> 1. The court shall find the defendant to be a prior offender, persistent offender, [or] dangerous offender . . . if:
>
>> (1) The indictment or information . . . pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, [or] dangerous offender . . . ; and
>>
>> (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, persistent offender, [or] dangerous offender . . . ; and
>>
>> (3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, persistent offender, [or] dangerous offender. . . .
>
> 2. In a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of its hearing, except the facts required by subdivision (1) of subsection 4 of section 558.016 [for a finding of dangerous offender] may be established and found at a later time, but prior to sentencing, and may be established by judicial notice of prior testimony before the jury.

In *Scharnhorst v. State*, this Court explained that section 558.021, was enacted to comply with the mandates set forth in *Specht v. Patterson*, 386 U.S. 605 (1967), which held that, where an extended-term punishment (such as for a dangerous offender) rests on evidence of guilt of an offense other than the felony charged and involves new determinations of fact, "due process requires those safeguards [that are] essential in a criminal prosecution."  775 S.W.2d 241, 244 (Mo. App. 1989) (quoting *State v. Berry,* 609 S.W.2d 948, 956 (Mo. banc 1980)).  We opined, in *Scharnhorst*, that the "constitutional necessity for *notice* is met by the § 558.021.1(1) & (2) provisions that the information formally plead the intention to invoke the extended term penalty and the facts upon which that imposition rests."  775 S.W.2d at 244 (emphasis added).

---

[4]The State originally claimed that Libertus was not actually found to be a "dangerous offender" but has since abandoned that argument.

Noting that the requirements of section 558.021 are mandatory (citing *State v. Emery*, 95 S.W.3d 98, 101-02 (Mo. banc 2003); *State v. Starnes*, 318 S.W.3d 208, 213-14 (Mo. App. 2010)), the State observes that, here, the substitute amended information contained no allegation that Libertus was a dangerous offender and did not allege the essential facts necessary to establish that he was a dangerous offender -- *i.e.*, facts showing that his crimes (1) "endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury" or (2) that his previous conviction was for a class A, class B, or dangerous felony, as required by section 558.016.4.  In addition, although Libertus was charged as a "prior offender," as defined in section 558.016.2, and properly found to be a "prior offender" under section 558.021, the State did not contend or present any evidence that Libertus's Florida conviction was equivalent to a class A, class B, or dangerous felony under Missouri law.

We find that the applicable statutes and other authorities confirm the State's contention. While section 558.021.2 provides that, in a jury trial, "the facts [as to dangerous offender status] may be established and found at a later time," it does not dispense with the necessity that the indictment or information "pleads all essential facts warranting a finding that the defendant is a . . . *dangerous offender*," or the requirement that "[e]vidence [be] introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a . . . *dangerous offender*."  § 558.021.1 (emphasis added).

In addition, under the statute that sets forth the "role of court and jury" in sentencing, "the court, and not the jury, shall assess punishment if . . . [t]he state *pleads and proves the defendant* is a . . . *dangerous offender*," as defined in section 558.016.  § 557.036.4(2)) (emphasis added).

We also note that Missouri Supreme Court Rule 23.01, which governs the form and contents of an indictment or information, requires the charging document to "[s]tate plainly,

7

concisely, and definitely the essential facts constituting the elements of the offense charged, ***including facts necessary for any enhanced punishment***[.]"  Rule 23.01(b)(2) (emphasis added); *see also* 28 Mo. Prac., *Mo. Criminal Practice Handbook* § 7:2 (2016) (noting that "[i]n light of *Apprendi v. New Jersey*, [530 U.S. 466] (2000), Rule 23.01(b)(2) now requires that any sentence-enhancing facts must be pleaded.  This rule is directed at facts, other than prior convictions, that change the classification or sentencing range of the offense.").

In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. *Jones v. United States*, 526 U.S. 227 (1999), a predecessor to *Apprendi*, involved a "sentence enhancement" for crimes that inflicted serious physical injury on the victim (a situation very similar to the designation of dangerous offender in this case).  In *Jones*, the United States Supreme Court very clearly decided that the facts giving rise to the "enhancement" must be charged, proven beyond a reasonable doubt, and submitted to the jury for its verdict.  526 U.S. at 243 n. 6, 252.  In this case, Libertus was neither charged as a dangerous offender, nor were the facts necessary for that determination submitted to a jury for their verdict.

We find the applicable Missouri Approved Charge Code ("MACH-CR") and its Notes on Use extremely persuasive here.  MACH-CR 2.30 sets forth the language to be used for alleging "dangerous offender" status in a charging document.  It indicates that the indictment or information must allege, pursuant to sections 558.016 and 557.036, that the defendant is a prior offender and that the defendant is a dangerous offender.  It then must set forth in detail the facts

8

that support those allegations.[5]  Significantly, Note on Use 7 for MACH-CR 2.30 states:  "The punishment range for a 'dangerous offender' may be enhanced either due to prior convictions or because defendant's conduct in committing the present felony endangered or threatened the life of another person."  The Note thus instructs that

> [i]f the dangerous offender status is being alleged due to the defendant's conduct *in the present offense* [such as in Libertus's case], those additional facts must be pleaded pursuant to the first numbered paragraph in 2.30.3.  Those additional facts must also be submitted to the jury, and the jury must make a finding thereon before the punishment range can be enhanced.

Note on Use 7 for MACH-CR 2.30 (citing *Apprendi v. New Jersey*, 530 U.S. 466; *Shepard v. United States*, 544 U.S. 13 (2005)) (emphasis added).

Here, at the sentencing hearing, just prior to finding Libertus to be a dangerous offender and pronouncing sentence, the circuit court stated, "I believe Counts I [forcible rape] and III [forcible sodomy] and the evidence in the case indicated that this would be a dangerous offender. Does the state agree . . . under the law?"  Both the Prosecutor and Defense Counsel agreed.

---

[5]Missouri Approved Charge Code 2.30.3, as to charging a "Dangerous Offender," provides as follows:

[*The indictment or information will first set out the basic charge, using MACH-CR 2.10 or 2.15.  It will then continue as below.*]

Defendant is a prior offender under Sections 558.016 and 557.036, RSMo, in that he has (pleaded guilty to) (been found guilty of) (been convicted of) a felony. Defendant is also a dangerous offender punishable by sentence to an extended term of imprisonment under Sections 558.016 and 557.036, RSMo, in that:

1. During the commission of the felony of [*name of felony*] referred to in the next above paragraph, the defendant knowingly (murdered) (endangered the life of) (threatened the life of) (inflicted serious physical injury on) (attempted to inflict serious physical injury on) (threatened to inflict serious physical injury on) [*name of another person*], and

2. Defendant has (pleaded guilty to) (has been found guilty of) (been convicted of) a (class A) (class B) (dangerous) felony as follows: (on) (on or about) [*date*], defendant (pleaded guilty to) (was found guilty of) (was convicted of) the felony of [*name of felony*] in the [*name of court and jurisdiction*], and such felony was a (class A felony under the provisions of Section ____, RSMo) (class B felony under the provisions of Section ____, RSMo) (dangerous felony as defined in Section 556.061(8), RSMo).

9

Based on the foregoing, however, we are persuaded that the circuit court lacked the authority under section 558.021 to pronounce Libertus a dangerous offender and therefore erred in doing so. The State urges this Court to simply strike the judgment reference to the dangerous offender finding and let the 100-year sentences stand. We decline to do so. The trial judge sentenced Libertus under the belief that he was sentencing a dangerous offender. We must remand for resentencing in light of the fact that he was not.

Although we deny Point I, in the sense that we do not agree with Libertus's argument that the error below was a failure to correctly sentence him as a "dangerous offender," we find that we must grant relief on this point because we have concluded that, in fact, the circuit court erred in finding Libertus to be a dangerous offender and sentencing him as such; hence, we order the case remanded for resentencing.

**Point II**

Libertus next contends that the circuit court plainly erred in admitting State's Exhibit 42, which the State introduced to prove Libertus's "prior offender" status, because it did not comply with statutory requirements for out-of-state records. He asserts that this was a manifest injustice because being found a prior offender denied him of his statutory right to jury sentencing.

Under section 558.016.2, a "prior offender" is "one who has pleaded guilty to or has been found guilty of one felony." The State is required to plead facts in the information or indictment that the defendant is a prior offender and offer evidence to prove such status prior to the case's submission to the jury. § 558.021. If the court finds that a defendant is a prior offender, the judge sentences the defendant rather than allowing the jury to recommend a sentence. §§ 558.016 & 557.036.4(2). *Emery*, 95 S.W.3d at 100.

10

To succeed on this point, Libertus must demonstrate that the procedures set forth in section 558.021were not followed and that this resulted in prejudice. *State v. Teer,* 275 S.W.3d 258, 260-61 (Mo. banc 2009). Matters of statutory application are reviewed *de novo,* without deference to the trial court's judgment. *State v. Jackson*, 385 S.W.3d 437, 444 (Mo. App. 2012).

Libertus claims that Exhibit 42 did not comply with section 490.130, which governs the admissibility of out-of-state court records and provides:

> The records of judicial proceedings of any court . . . of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding associate circuit judge of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come.

"Consequently, to be given faith and credit in Missouri courts, foreign judgments must be authenticated; they must bear the attestation and seal of the clerk of the court and the certification of a judge." *State v. Monroe,* 18 S.W.3d 455, 458-59 (Mo. App. 2000). "When prior convictions are the basis for enhanced punishment . . . , the state must prove the fact of prior convictions and do so in conformity with applicable statutory requirements for such proof." *Id*. at 458 (citing *State v. Young,* 366 S.W.2d 386, 388 (Mo. 1963)).

To prove Libertus a prior offender, the State moved for admission of Exhibit 42 at a pre-trial hearing. The exhibit consisted of an exemplification certificate authenticating a judgment from the Circuit Court of Pasco County, Florida. The judgment reflected that in 1998 Libertus entered a plea of *nolo contendere* to the second-degree felony of attempted sexual battery. FLA. STAT. § 794.011. Defense counsel objected to the admission of Exhibit 42 based on its form, stating that it was a copy, was "not stapled together in Florida," and did not contain a raised seal.

The court examined the document, found that a raised seal was not required, and stated:

> Exhibit 42 appears to be an exemplification certificate with original signatures from the Clerk and Comptroller of Pasco County, Florida. It appears to have an original

11

signature of a Circuit Judge in Pasco County, the Sixth Judicial Circuit of Florida, and a certification from the Clerk and Comptroller of Pasco County, Florida. It's the exact same exemplification and authentication Missouri uses in terms of its form. . . . [T]here don't appear to be any changes . . . that are obvious. It indicates [that] he was convicted of a second degree felony of attempted sexual battery.

The court admitted Exhibit 42, found beyond a reasonable doubt that Libertus was a prior offender, and ordered that the sentencing would be done by the court.

Libertus asserted in his new trial motion only that Exhibit 42 did not have a raised seal. He now claims that the circuit court plainly erred in admitting Exhibit 42 because the exemplification certificate did not explicitly identify the court records it was authenticating or refer to Libertus by name and was not stapled to the records that it purported to authenticate.

We find no error in the admission of these documents. To admit a court record, the State need only prove "conformity with applicable statutory requirements." *State v. Martinez*, 407 S.W.3d 669, 673 (Mo. App. 2013). As noted, under section 490.130, records of judicial proceedings from any state are given full "faith and credit" in this state and are therefore admissible if they are: (1) attested by the clerk of the court; (2) bear the seal of the court annexed; and (3) are certified by a judge of the court as "attested in due form."

The records that comprised Exhibit 42 satisfied these requirements. First, the records were attested to by the "Clerk & Comptroller" of Pasco County, Florida, in an exemplification certificate, which stated that the clerk certified that the "attached and foregoing" were true and correct copies. Although the certificate was not stapled to the records, as the circuit court noted, they appeared to all have been included in the same envelope from the Florida court, and, thus, the records of Libertus's conviction necessarily were "foregoing" from the certification. Thus, there was enough evidence to show that the conviction records were "attested by the clerk of the court." Second, the records bear the seal of the "Sixth Judicial Circuit" and the title of the "Clerk

12

of Circuit Court & County Comptroller" and identify themselves as being from Pasco County in the "State of Florida." Thus, the records bore the court's seal as required by section 490.130. Finally, the records were certified by a judge, and that judge's signature was attested to in due form. A judge signed the form, claiming to be a circuit judge of the Sixth Circuit and certifying that the records were attested to in due form. The circuit clerk then attested that the judge who signed the certificate was a commissioned and qualified judge of the circuit, thus attesting to the judge's certification, meeting the final statutory requirement of section 490.130.

In sum, the records were sufficiently authenticated, and the circuit court did not err in admitting them or in relying on them to find that Libertus was a prior offender.[6] Point denied.

### Point III

In his final point, Libertus contends that the circuit court plainly erred in sustaining the State's hearsay objection and precluding the forensic nurse examiner from testifying about D.L.'s answer to whether she had had consensual sex in the last seven days. Libertus claims that the testimony fell under certain exceptions to the hearsay rule and that the court's refusal to permit it created a manifest injustice because the testimony was necessary for his defense.

"A trial court has broad discretion to admit or exclude evidence," and its decision will be reversed only for a clear abuse of discretion. *State v. Forrest,* 183 S.W.3d 218, 223 (Mo. banc 2006). A court abuses its discretion when its ruling "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id*.

At trial, the State presented testimony, photographs, and diagrams documenting D.L.'s injuries via the testimony of Susan Kilger, the forensic nurse examiner who examined D.L. and gathered rape kit evidence after the attack. Kilger stated that she examined D.L. from front to

---

[6]We note that Libertus does not argue that he did not meet the definition of a prior offender, only that Exhibit 42 did not comply with the requirements of section 490.130. *See Martinez*, 407 S.W.3d at 674, n. 2.

back, head to toe, and side to side, looking for signs of trauma and documenting every mark. Kilger noted petechiae[7] on D.L.'s neck, cheek, and left forearm; lacerations on her arm, leg, and neck; abrasions on her shoulder, neck, and ankle; a bruise and small, ruptured blood vessels on her knee; a bruise underneath her chin; and redness around her hairline. Kilger told the jury that there also was redness in the vaginal area, which indicated trauma. Kilger stated that such redness can occur with consensual sex but that, with consensual sex, there is less chance of such trauma. Kilger also stated that she found two lacerations in the anal area, which were indicative of blunt force trauma, because they were in an unusual spot. She explained that any injuries from consensual rectal sex would have been in a different location. Kilger also testified that mucousy tissue coming from the rectum indicated trauma to the rectum, but she again agreed that it could result from consensual sex.

Kilger explained that, as part of her examination of every patient complaining of a sexual assault, she asks whether there has been consensual sex within the past seven days. On cross-examination, defense counsel attempted to show that any abnormalities in the genital exam could have come from recent consensual sex. Referring to Kilger's notes, he asked:

> Q. And there is a box marked that, yes, there was sex within the past seven days, correct?
>
> A. [Kilger]: Yes.
>
> Q. [Defense counsel]: And that was consensual sex?
>
> [Prosecutor:] Objection, your Honor, hearsay.

The court sustained the prosecutor's objection.

---

[7]Kilger explained that "petechiae" is a more recent type of injury that occurs when pressure is applied to a blood vessel and blood drops form underneath the skin's surface.

14

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Martinez*, 407 S.W.3d at 672. As a general rule, hearsay is not admissible unless it qualifies under some recognized exception to the hearsay rule. *Id*. Libertus contends that two exceptions apply here: (1) statements to a treating physician or nurse that are "reasonably pertinent to diagnosis and treatment"; and (2) "evidence explaining evidence . . . showing that the inference arising or sought to be drawn therefrom is not warranted," citing *State v. Crews,* 406 S.W.3d 91, 93 (Mo. App. 2013), and *State v. Taylor*, 929 S.W.2d 925, 928 (Mo. App. 1996). Libertus argues that he should have been allowed to admit D.L.'s statement to the treating nurse that there had been recent consensual sex to establish an alternative reason for any evidence of trauma observed by Kilger during the exam. Libertus contends that the court's denial of this evidence constituted a manifest injustice because it denied him his constitutional right to "a meaningful opportunity to present a complete defense," citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

We disagree that the exclusion of this evidence constituted a manifest injustice. As our Supreme Court has observed, "on direct appeal, a manifest injustice or miscarriage of justice exists so as to entitle a defendant to relief for plain error only when the error is outcome determinative." *State v. Presberry*, 128 S.W.3d 80, 85 (Mo. App. 2003) (citing *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002)). Libertus cannot show that this evidence, even if erroneously excluded, was outcome-determinative in light of all the other evidence presented, *e.g*., Kilger's observation of marks consistent with D.L. having been choked and thrown around, as well as evidence of trauma to her vaginal and anal areas; the police officer's discovery of D.L.'s damaged bra at the scene and a corresponding abrasion on D.L.'s shoulder; the neighbor's observation of D.L. running out of her house with her clothes open and screaming and of Libertus following D.L. carrying a handgun; Libertus's attempt to conceal the handgun from the neighbor and to

15

hide the rifle at his friend's (both of which evidenced his consciousness of guilt) and, most significantly, Libertus's admission to Hufford that he had raped D.L.

In sum, Libertus cannot prove that excluding D.L.'s answer to whether she had consensual sex in the past week had any effect on the verdict, let alone an outcome-determinative effect; thus, he fails to demonstrate a manifest injustice or miscarriage of justice. The circuit court did not plainly err in excluding this evidence. Point denied.

## Conclusion

Based on the foregoing, we affirm Libertus's convictions. We remand to the circuit court for resentencing, however, based on our determination that Libertus could not be found to be a dangerous offender by the trial court under the procedural posture of this case.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur

16