KURT S. ODENWALD, Presiding Judge *833 Introduction
The State charged Jacob K. Sloan ("Sloan"), as a dangerous offender, with one count of resisting arrest, one count of second-degree assault of a law enforcement officer, and one count of third-degree assault of a corrections officer. A jury found Sloan guilty on counts one and three, and guilty of a lesser-included offense on count two. Sloan raises two points on appeal. Sloan maintains that the trial court plainly erred in sentencing him as a dangerous offender and that the State did not present sufficient evidence to support the jury's resisting-arrest conviction. Because the State provided proper notice in its information and because the trial court heard sufficient testimony to determine that Sloan was a dangerous offender, we reject Sloan's first point. The record also contains evidence that Sloan purposely struggled against being handcuffed and refused to submit to a weapons search, thereby supporting the jury's resisting-arrest conviction. We affirm the judgment of the trial court.
Factual and Procedural History
The State charged Sloan with one count of resisting arrest, one count of second-degree assault of a law enforcement officer, and one count of third-degree assault of a corrections officer. The charges arose from allegations that Sloan resisted arrest by using violence or physical force, which resulted in serious physical injury to one officer, and knowingly striking another officer. The case proceeded to a jury trial.
In its Second Amended Information, the State alleged that Sloan was a dangerous offender due to Sloan's prior felony-robbery conviction. Before trial, the State offered a certified copy of Sloan's conviction. Defense counsel did not object when the trial court accepted the evidence and pronounced Sloan a dangerous offender.
In sufficiency-of-the-evidence cases, we view the evidence presented at trial in the light most favorable to the verdict. See State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010). Thus, we consider the following facts adduced at trial: Officers Robert Scott ("Officer Scott") and Patrick Martin ("Officer Martin") responded to a disturbance call at a gas station. When the officers arrived at the gas station, they found Sloan in a car, asked Sloan to exit the vehicle, and obtained his information. Subsequently, Officer Martin discovered Sloan's outstanding felony warrant.
Officer Martin approached Sloan and notified Sloan that he was under arrest for a felony warrant. As Officer Martin attempted to handcuff Sloan, Sloan tensed his body and pulled his hands apart. Officer Martin repeatedly told Sloan to stop resisting. Following the struggle, Officer Martin was able to secure the handcuffs on Sloan.
Immediately after handcuffing Sloan, Officer Martin attempted to search Sloan's person for weapons. Officer Martin told Sloan to spread his feet, but Sloan refused to comply. Officer Martin then forced Sloan's legs apart. When Officer Martin bent down to perform the search, Sloan threw his hips back and leaned onto Officer Martin. Sloan alleges that he only leaned back against Officer Martin because, as Officer Martin began his pat-down search, he grabbed the handcuffs, forcing Sloan backwards. Sloan tensed his body and Officer Martin believed Sloan would head-butt him, which Sloan denied. Instead, Sloan testified that he turned to speak with Officer Martin.
Officer Martin positioned Sloan against a metal propane display to gain control of him. Officer Martin's right hand went between *834 Sloan's right shoulder and a propane display in front of the store, fracturing Officer Martin's fourth metacarpal. Officer Martin again told Sloan to stop resisting; Sloan finally complied. Officer Martin led Sloan to the police vehicle.
Officer Martin transported Sloan to the police department. Corrections Officer Kyle Gregg ("Officer Gregg") met Officer Martin at the department. The officers told Sloan to exit the police vehicle. Sloan eventually departed the vehicle. Officers Gregg and Martin escorted Sloan into the jail. However, before Sloan reached the jail, he stopped, stiffened his body, and refused to go inside the jail. Sloan placed his feet up against the wall, and pushed back towards Officers Gregg and Martin. Sloan's head hit Officer Gregg's head. In response, the officers directed Sloan to the ground. Eventually, the officers were able to subdue Sloan and confine him.
During trial, Sloan moved for judgment of acquittal at the close of all evidence. The trial court denied Sloan's motion. The trial court submitted the case to the jury. The jury found Sloan guilty of resisting arrest, third-degree assault of Officer Gregg, and the lesser-included offense of felony second-degree assault of Officer Martin for causing serious physical injury with criminal negligence. The trial court sentenced Sloan to four years in prison each for resisting arrest and third-degree assault of a corrections officer and one year for second-degree assault of an officer. The trial court set all convictions to run concurrently.
Points on Appeal
Sloan raises two points on appeal. Point One contends that the trial court plainly erred in finding that Sloan is a dangerous offender because the State did not give Sloan constitutionally sufficient notice of the basis for the dangerous offender status. Point Two alleges that the trial court erred in entering judgment against Sloan because the State's evidence was insufficient to sustain the jury's finding that Sloan resisted arrest.
Discussion
I. Point One-Dangerous-Offender Finding
Trial counsel did not object to the trial court's finding that Sloan was a dangerous offender. Thus, Sloan seeks plain error review of Point One.
Sloan argues that the trial court plainly erred in finding that Sloan is a dangerous offender and subjecting him to an enhanced range of punishment because the State failed to give constitutionally sufficient notice of the basis for the dangerous-offender status. Further, Sloan contends that the jury failed to convict Sloan of knowingly inflicting or threatening to inflict serious physical injury on another person during this incident. Therefore, Sloan claims that the trial court lacked authority to sentence Sloan as a dangerous offender.[1]
*835 A. Plain Error Standard
"Any issue that was not preserved at trial can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error." State v. Perry, 548 S.W.3d 292, 300 (Mo. banc 2018) (internal quotation omitted); Rule 30.20.[2] "Relief under the plain error rule is granted only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." Perry, 548 S.W.3d at 300-01 (internal quotation omitted). If we find no substantial ground for believing that "manifest injustice or miscarriage of justice has resulted[,]" then "we should not exercise our discretion to conduct plain error review." State v. Libertus, 496 S.W.3d 623, 627 (Mo. App. W.D. 2016). We use the plain-error rule sparingly. State v. Letica, 356 S.W.3d 157, 167 (Mo. banc 2011).
If we conclude that plain error exists, we conduct plain-error review using a two-step process. State v. Wilkerson, 330 S.W.3d 851, 854 (Mo. App. W.D. 2011). We first evaluate whether the trial court committed "evident, obvious, and clear" error. Collings v. State, 543 S.W.3d 1, 14 (Mo. banc 2018). We then determine whether such "evident, obvious, and clear" error produced a "manifest injustice or a miscarriage of justice." Id.
B. No Plain-Error
Sloan first alleges that the State failed to provide the constitutionally mandated notice required to enhance Sloan's offenses under the "dangerous offender" statutes. Thus, Sloan concludes that the trial court plainly erred by finding that Sloan is a dangerous offender, which resulted in manifest injustice.
Section 558.016.4[3] defines a "dangerous offender" as one who: "(1) Is being sentenced for a felony during the commission of which he knowingly ... endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and (2) Has pleaded guilty or has been found guilty of a class A or B felony or a dangerous felony." A "dangerous offender" status enhances the maximum sentence one grade of felony higher. Section 558.016.7.
In a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of its hearing, except the facts required by subdivision (1) of subsection 4 of [S]ection 558.016 [for a dangerous offender finding] may be established and found at a later time, but prior to sentencing, and may be established by judicial notice of prior testimony before the jury.
Section 558.021.2 RSMo (2000). The "constitutional necessity for notice is met by the [Section] 558.021.1(1) [and] (2) provisions that the information formally plead the intention to invoke the extended term penalty and the facts upon which that imposition rests." Libertus, 496 S.W.3d at 628.
Sloan analogizes his situation to that in Libertus. See id. However, Libertus is distinguishable. Id. In Libertus, the Western District found that the State neglected to *836 notify the defendant adequately, in the amended information, that it sought the dangerous-offender enhancement. Id. Specifically, the Court found that:
While [S]ection 558.021.2 provides that, in a jury trial, "the facts [as to dangerous offender status] may be established and found at a later time," it does not dispense with the necessity that the indictment or information "pleads all essential facts warranting a finding that the defendant is a ... dangerous offender," or the requirement that "[e]vidence [be] introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a ... dangerous offender."
Id. at 629 (quoting Section 558.021.1 RSMo (2000) ) (emphasis omitted).
Here, the State pleaded in its Second Amended Information that Sloan is a dangerous offender due to his prior felony conviction. During the pre-trial hearing, the State presented a certified copy of Sloan's prior robbery conviction. Additionally, although the State did not explicitly plead under the "dangerous offender" heading that Sloan knowingly inflicted or attempted to inflict serious physical injury on another person during the present charges, the charging document contained the requisite individual facts within the count allegations. See Section 558.016.4. Specifically, the State charged that Sloan "knowingly caused physical contact with [Officer] Gregg" and "recklessly caused serious physical injury to [Officer] Martin." These allegations provided Sloan notice that the State both charged Sloan with knowingly causing or threatening to cause serious physical injury to officers and sought dangerous offender enhancement under Section 558.016. See Section 558.021.1(1) RSMo (2000); State v. Stapleton, 661 S.W.2d 620, 622 (Mo. App. W.D. 1983) ("Section 558.021.1(1) requires only that the information plead all essential facts warranting a finding that the defendant is a prior offender, persistent offender or dangerous offender.").
Sloan next argues that because the jury did not convict him of knowingly inflicting serious physical injury on another person, the trial court improperly found that he was a dangerous offender. Under Sections 558.021 and 557.036, "the court, and not the jury , shall assess punishment if ... [t]he state pleads and proves the defendant is a ... dangerous offender, as defined in [S]ection 558.016." Libertus, 496 S.W.3d at 629 (emphasis added); Section 558.021.1(3) RSMo (2000). Further, the trial court may establish the requirements in Section 558.016.4(1)-the facts establishing that the accused "knowingly inflicted or attempted ... to inflict serious physical injury"-by considering all testimony before the jury. Section 558.021.2 RSMo (2000).
The Missouri Approved Charge Code ("MACH-CR") instructs that "[i]f the dangerous offender status is being alleged due to the defendant's conduct in the present offense, those additional facts must ... also be submitted to the jury, and the jury must make a finding thereon before the punishment range can be enhanced." Note on Use 7 for MACH-CR 2.30. Here, the trial court properly decided Sloan's status as a dangerous offender based on both Sloan's prior conviction and the current charge.
The trial court heard testimony that Sloan threw his hips back and started to lean on Officer Martin, placing Sloan's body weight on the officer. Officer Martin demanded that Sloan stop resisting multiple times throughout the interaction. Sloan tensed his body and tried to strike Officer Martin with his head. Sloan's actions forced Officer Martin to position Sloan against the propane display to gain control *837 over him. Officer Martin injured his hand as a result. The trial court reviewed the trial testimony. The trial court heard defense counsel's argument that Sloan did not qualify as a "dangerous offender" due to the jury's verdict. However, the trial court-in its discretion and authority to determine sentencing-still found the statute applicable. The trial court properly determined that Sloan is a dangerous offender under Section 558.016. Thus, we find no evidence of error, plain or otherwise.
Even assuming, arguendo , that we found the State failed to properly plead Sloan's "dangerous offender" status, Sloan does not prove that this plain error amounted to a manifest injustice or miscarriage of justice. Where there is "other evidence before the court which establishe[s] the same facts[,]" no prejudice is shown. State v. Merrill, 990 S.W.2d 166, 171 (Mo. App. W.D. 1999) ; State v. Neighbors, 502 S.W.3d 745, 750 n.4 (Mo. App. W.D. 2016). The trial court heard testimony that Sloan purposely placed his feet up against the wall of the jail in order to prevent the officers from escorting him into jail. In his struggle, Sloan forcefully pushed against the officers. As a result, Sloan knowingly slammed his head backward towards Officer Gregg. The record supports the jury's conviction on count three, finding that Sloan knowingly attempted to harm Officer Gregg. Sloan's knowing attempt to injure Officer Gregg sufficiently proves the second part of the dangerous offender status. See Section 558.016.4. Combined with Sloan's prior felony conviction, the trial court could have found Sloan a dangerous offender even without the jury's lesser-included conviction on count two. Point One is denied.
II. Point Two-Sufficiency-of-the-Evidence Regarding the Resisting-Arrest Conviction
A. Standard of Review
In reviewing the sufficiency of the evidence, our review "is limited to whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." State v. Hunt, 451 S.W.3d 251, 257 (Mo. banc 2014). "To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence" but, instead, " 'accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences.' " State v. Zetina-Torres, 482 S.W.3d 801, 806 (Mo. banc 2016) (quoting State v. Holmes, 399 S.W.3d 809, 812 (Mo. banc 2013) ). However, we "may not supply missing evidence, or give the [S]tate the benefit of unreasonable, speculative, or forced inferences." State v. Clark, 490 S.W.3d 704, 707 (Mo. banc 2016). We do not "act as a super juror with veto powers, but give[ ] great deference to the trier of fact." State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotations omitted).
B. Sufficient Evidence of Resisting Arrest
Sloan argues that the State's evidence was insufficient to sustain a finding of guilt because the State lacked evidence that Sloan's resistance occurred prior to the arrest's completion. Sloan does not contest his knowledge of Officer Martin's intent to arrest him. Sloan merely contests whether he purposely attempted to prevent Officer Martin from effecting the arrest. See Section 575.150.1(1).
Resisting arrest has three elements: (1) knowledge that a law enforcement officer *838 is making an arrest, (2) the defendant purposely attempted to prevent the officer from effecting the arrest, and (3) resisting the arrest by threatening or using violence or physical force. Section 575.150.1. "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Section 544.180 RSMo (2000).
The State must prove that the arrest was in progress when the "resistance" occurred. State v. Ondo, 231 S.W.3d 314, 316 (Mo. App. S.D. 2007). "Once the arrest has been fully effectuated a defendant should be considered to be in custody. Where a court finds that the arrest has been completed before the actions constituting 'resisting' have occurred, there cannot be a valid conviction for resisting arrest." Id. (internal quotations omitted).
Sloan posits that his arrest was complete once the officers placed him in handcuffs. However, we disagree with Sloan's narrow construction of the term "arrest." See id.
[T]he cases indicate that what is sufficient restraint is highly dependent on the particular facts and circumstances, but the key factor [the Missouri Supreme Court] has identified is whether the evidence showed 'actual restraint of the person of the defendant,' or otherwise showed control of the defendant's movements by the officer.
State v. Ajak, 543 S.W.3d 43, 49 (Mo. banc 2018) (internal citations omitted).
Here, as Officer Martin attempted to handcuff Sloan, Sloan turned his head and stiffened his arms, challenging Officer Martin's attempt to restrain him. Officer Martin was eventually able to place the handcuffs on Sloan. Officer Martin immediately attempted to pat Sloan down, searching for potential weapons. As Officer Martin released Sloan's arms to conduct the pat-down, Sloan took advantage of Officer Martin's inability to constrain Sloan by throwing his hips back, leaning on Officer Martin, and attempting to head-butt the officer.
Sloan maintains that his arrest was complete as soon as Officer Martin placed the handcuffs on him. Thus, Sloan contends, all of his alleged resistance occurred after the arrest was complete. Sloan relies heavily on Ajak for the proposition that an arrest is completed once the defendant is "actually restrained," meaning handcuffed. See Ajak, 543 S.W.3d at 49. However, contrary to Sloan's assertion, "if the defendant is not actually under the officer's restraint or control, the arrest has not been effectuated." Id. In Ajak, the arrest became complete when the defendant was handcuffed, sitting, surrounded by multiple officers, and located within an enclosed space. Id. at 50. Unlike the defendant in Ajak, the record before us shows that Sloan resisted Officer Martin's initial attempts to place him in handcuffs, was not surrounded by multiple officers, and despite being handcuffed, Sloan continued to act in a manner demonstrating that he was not under the officer's control. Id.
Officer Martin did not have control over Sloan until after Sloan stopped stiffening his body and attempting to harm Officer Martin, which occurred only after the officer forced Sloan against the propane display. Thus, Sloan's arrest was not complete until Officer Martin began leading Sloan to the police vehicle, which occurred only after Sloan's continued resistance. The State presented sufficient evidence to support the jury's guilty verdict. Point Two is denied.
Conclusion
The judgment of the trial court is affirmed.
Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

In his reply brief, Sloan clarifies his argument as alleging that the statute is unconstitutional because it violates his right to have the jury decide all facts that increase the penalty for a crime beyond the maximum. However, Sloan failed to raise this constitutional challenge in his point on appeal. Additionally, appellants must raise constitutional issues "at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings." Kirk v. State, 520 S.W.3d 443, 457 (Mo. banc 2017). See, e.g., State v. Cerna, 522 S.W.3d 373, 382 (Mo. App. E.D. 2017) ("The earliest opportunity to raise a constitutional challenge to the charging statute is by a pretrial motion to quash the indictment. The failure to challenge the constitutionality of a statute at the earliest opportunity waives the issue."). Sloan waited until his reply brief to raise a constitutional challenge against the statute. Thus, Sloan waived the issue for appeal. See Kirk, 520 S.W.3d at 457.

All rule references are to Mo. R. Crim. P. (2017).

All statutory references are to RSMo (Supp. 2014) unless otherwise noted.