

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )    No. SD36333
                                      )    Filed: September 15, 2021
RONALD R. SPRADLING,                  )
                                      )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF HICKORY COUNTY

Honorable James A. Hackett, Associate Circuit Judge

**<u>AFFIRMED</u>**

Richard Spradling (Defendant) was charged by third amended information with committing the following six offenses in September 2017: two counts of the class D felony of kidnapping in the second degree, in violation of § 565.120 (Counts 1 and 3); two counts of the unclassified felony of armed criminal action (ACA), in violation of § 571.015 (Counts 2 and 4); one count of the class E felony of unlawful use of a weapon, in violation of § 571.030 (Count 5); and one count of the class D felony of unlawful possession of a firearm by a felon, in violation of § 571.070 (Count 6).[1] Counts 2 and 4 alleged that: (1)

---

[1] All statutory references are to RSMo (2016). All rule references are to Missouri Court Rules (2020).

Defendant had two prior ACA convictions on February 17, 1987; and (2) the minimum sentence for a third ACA conviction was 10 years without eligibility for parole.[2]

At trial, the verdict-directing instructions for the kidnapping charges (Instructions 7 and 9), the unlawful use of a weapon charge (Instruction 11), and the unlawful possession of a weapon charge (Instruction 12) each included paragraphs asking the jury to determine whether Defendant acted in lawful self-defense or lawful defense of property. Instructions 13 and 14 explained lawful self-defense and lawful defense of property, respectively.

The jury found Defendant guilty on each count. The court imposed the following sentences: seven years on each kidnapping count; 12 years on each ACA count; four years on the unlawful use of a weapon count; and six years on the unlawful possession of a firearm count. All sentences were concurrent except for the one involving unlawful possession of a firearm, which was to be served consecutively to the sentences on all other counts. This appeal followed.

Defendant raises four points on appeal. In Points 1-3, Defendant contends the trial court abused its discretion in overruling Defendant's requests to strike venirepersons 14, 24, 43 and 46 for cause. According to Defendant, these venirepersons' responses during *voir dire* unequivocally showed they would not follow an instruction stating that a

---

[2] In relevant part, § 571.015 states:

> Any person convicted of a third or subsequent offense of armed criminal action shall be punished by imprisonment by the department of corrections and human resources for a term of not less than ten years. … No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of ten calendar years.

§ 571.015.3.

convicted felon could use a firearm in self-defense. In Point 4, Defendant contends the trial court plainly erred in imposing a sentence of 12 years for each ACA conviction. Defendant argues that those sentences were imposed because the court misinterpreted § 571.015 to require a minimum sentence of 10 years on each ACA count. Finding no merit in any of Defendant's points, we affirm.

*Points 1-3*

Defendant's first three points contend the trial court erred by not striking venirepersons 14, 24, 43 and 46 for cause. For ease of analysis, we consider these three points together. During defense counsel's questioning of the venire, the following occurred:

> [Defense counsel]: … So you're going to hear that [Defendant], who has pled guilty to a felony offense, is not entitled legally to have a firearm.[3] Is there anybody here who believes as part of his self-defense, if he used a firearm as part of his claim of self-defense, that because he has a felony, he automatically waives his ability to use a firearm for self-defense purposes?
>
> UNIDENTIFIED VENIREPERSON: Yes.
>
> [Defense counsel]: All right. And I see some hands, so we'll kind of go through the same thing again. And I was told I went too fast the last time, so I will go a little slower this time. No. 2?
> ….
>
> [Defense counsel]: And, again, that would impact your ability to be fair and impartial in this case? Because that's what we're asking this question for, right? You would automatically disbelieve if he gets up there and says, "No, you have a felony. You couldn't have used the gun no matter what"?
>
> VENIREPERSON 2: Right.

Defense counsel then identified a number of persons with their hands raised, including venirepersons 46 and 43. The following then occurred:

---

[3] A convicted felon is prohibited from possessing a firearm. *See* § 571.070.1(1).

3

UNIDENTIFIED VENIREPERSON: Did you say he was not supposed to have a gun?

[Defense counsel]: As a convicted felon, the law says one is not supposed to possess a firearm. No. 16. No. 6. No. 1.

VENIREPERSON 1: I have a question about that.

[Defense counsel]: Okay. I'll come back to you. Let me – 43. I'm limited in what I can answer, but go ahead and ask your question.

VENIREPERSON 1: Okay. You say – it's like if he didn't possess it, if it wasn't his firearm, if he took it away from someone to defend himself –

[Defense counsel]: That will not be the evidence that you will hear.

VENIREPERSON 1: Right. All right.
….

[Defense counsel]: Okay. Is that – are you able to, then, be fair and impartial towards [Defendant], knowing that wasn't a situation where, for example, they attacked him with a gun and he disarmed the gun? So my question is if you will hear evidence that he had a gun, it was his gun, and that he used it in what he believed to be self-defense of property or self.

VENIREPERSON 1: But he shouldn't have had it in the first place.

UNIDENTIFIED VENIREPERSON: But he's a felon.

[Defense counsel]: But he's a felon. Correct.

VENIREPERSON 1: Right.
….

UNIDENTIFIED VENIREPERSON: So he lost that, and then was in possession of it.

[Defense counsel]: 65. No. 14. No. 17. No. 24. No. 49. No. 29. No. 21. It's okay. You don't have to apologize. It's okay. No. 15. … And just so that it's clear, everybody whose hand had rose – and I count about 30 individuals – my understanding is all of you that raised your hand, basically, would automatically disbelieve [Defendant] because of that fact, that he's – he's a felon, he wasn't supposed to possess a firearm; and therefore, his self-defense would not be appropriate if he uses a firearm?

VENIREPERSON 22: I'm not saying that I would necessarily –

4

[Defense counsel]: That's why I want to clarify.

VENIREPERSON 22: – disbelieve –

UNIDENTIFIED VENIREPERSON: Yeah.

VENIREPERSON 22: – his statements.

[Defense counsel]: Okay.

VENIREPERSON 22: I just disagree with if you're going to break one law to uphold another one, is what I –

[Defense counsel]: And that's a good – that's a good clarification. So, No. 22, and I ask it usually broad, and then I come back in a little bit so that we are all on the same page. So even if he violated the felon in possession of a firearm law, right, you would not necessarily take away his ability to defend himself with the use of a firearm as to his other charges?
….

VENIREPERSON 22: I'm not saying that I would disbelieve him, necessarily. I'm just saying that he's already broken this law, and then he's breaking the law of not having a gun so that he can defend himself. That doesn't make sense to me.

[Defense counsel]: Now, I don't – my job is not to try and confuse anybody, so I want to make sure I'm very clear on this. And I know you're kind of saying –
….

VENIREPERSON 15: Okay. So your first question said would we hold it against him. This question is asking would we disbelieve him.

[Defense counsel]: So I asked it differently for a couple different reasons, because sometimes it's terminology, so let me clarify. I don't want anyone being confused. The testimony will be is that [Defendant], we believe, will testify that he used a gun in which he believed he – to defend himself or his property. You will also hear that as a convicted felon he's not entitled to even possess or handle a firearm. The law says if you have a prior felony conviction, you cannot own or possess a firearm. So my question is would anybody here disregard for that reason alone; that is, if he wasn't supposed to have the firearm to begin with, there's nothing that he says that will allow me to give him the ability to have a firearm for self-defense? That is, he could have used a knife, he could have used a bat, he could have – right, something else, but he shouldn't have had the gun. So, therefore, I won't

5

even consider his self-defense for that reason only. And I see some hands. No. 50? And maybe instead of just going down the list, let me just hear what your explanation is so that there's not confusion. And that way, if I need to come back to anybody, we can do that.

….

VENIREPERSON 62: I strongly believe that he gave up his right to a firearm. He did have other – he would have had other options for defending his property. I find it very hard to overlook that.

[Defense counsel]: It'd be difficult to be fair and impartial, as we've talked about?

VENIREPERSON 62: Uh-huh.

[Defense counsel]: Thank you, ma'am. All right.

VENIREPERSON 46: 46. I have the same belief, and I think he shouldn't have had a gun.

[Defense counsel]: 46, you – Okay. Thank you, ma'am.

Following the examination of the panel by counsel for the parties, the trial court asked the entire venire panel about their ability to set aside their opinions and follow the court's instructions on self-defense:

THE COURT: Folks, there's been a few of you that have expressed an opinion about what you believe the law is or at least ought to be. You understand that the Court will give you written instructions if you're chosen to serve as jurors in this case. Those instructions are, in fact, what the law is. What I want to know is if you have an opinion that's contrary to the instructions that I'm going to have to give at the end of this case, are you going to be able to set your opinion about what the law – what you think the law should be and be able to follow the instructions of what the law is? And I'll give you the example. The one that I think is going to come up is self-defense. If I give you an instruction that – and I think [defense counsel] has already, basically, acknowledged that his client has a felony, or at least he expects that's going to be the evidence, that he has a felony – as a felon, he has a right to defend himself, and it lays out the elements that you have to find and believe, are you going to be able to follow the instructions and the evidence you are to hear even though you might personally believe that a felon can never possess a firearm to defend themselves? Or are you going to sit there and go, "Nope. No felon can ever have a firearm. No self-defense"? So are you going to follow my instructions? Is there anyone here

6

that will not follow my instructions? That's fine. That's what I want to see.
I want to see – keep your hands up so I can call those numbers.

Ten venirepersons raised their hands in response to this question. All of them were struck for cause by the trial court. That group of ten did not include venirepersons 14, 24, 43 and 46. Defense counsel moved to strike those venirepersons for cause because of responses given to questions about self-defense. The prosecutor noted that any venireperson who said they could not follow the court's instructions had already been stricken. The trial court denied the request to strike venirepersons 14, 24, 43 and 46, and they served on the jury. After the close of the evidence, the trial court gave the jury instructions addressing lawful self-defense and lawful defense of property.

In Points 1-3, Defendant argues that the trial court erred in failing to strike venirepersons 14, 24, 43 and 46 for cause. "A trial court has broad discretion in ruling on a motion to strike a juror for cause." *State v. White*, 462 S.W.3d 915, 920 (Mo. App. 2015). "The circuit court's ruling on a challenge for cause will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion." *State v. Wood*, 580 S.W.3d 566, 580 (Mo. banc 2019) (internal quotation marks and citation omitted). Because the trial court is in a superior position to assess the demeanor of the prospective jurors, a factor of critical importance in assessing attitudes and qualifications of potential jurors, we give deference to the trial court's determination. *Id*.

To be stricken for cause, a venireperson's beliefs must impair that person's ability to follow the court's instructions. *State v. Kalter*, 442 S.W.3d 124, 131 (Mo. App. 2014); *State v. Plummer*, 860 S.W.2d 340, 348 (Mo. App. 1993). That assessment must be made based on the entire *voir dire* examination, rather than a single response. *State v. McFadden*, 369 S.W.3d 727, 738 (Mo. banc 2012); *State v. Savage*, 609 S.W.3d 71, 83

7

(Mo. App. 2020); *State v. Grondman*, 190 S.W.3d 496, 498 (Mo. App. 2006). Whether bias or prejudice exists is a finding of fact. *State v. Leisure*, 749 S.W.2d 366, 372 (Mo. banc 1988). The determination of that factual issue is essentially one of credibility and is largely one of demeanor. *Id.*; *State v. Stewart*, 517 S.W.3d 680, 684 (Mo. App. 2017).

Defendant contends the trial court abused its discretion by denying the request to strike venirepersons 14, 24, 43 and 46 for cause. According to Defendant, each of these venirepersons "unequivocally indicated that [he or she] would not consider the evidence of and a jury instruction regarding whether [Defendant] acted in self-defense, and no follow-up question elicited a direct, unequivocal assertion from [each venireperson] that [he or she] would follow the trial court's instruction regarding self-defense." We disagree for the following reasons.

First, the record does not support Defendant's argument that venirepersons 14, 24, 43 and 46 gave unequivocal answers that they would not follow the court's instruction on self-defense if Defendant used a firearm. The transcript demonstrates that the venirepersons were responding to a variety of questions posed by defense counsel during *voir dire*. The initial inquiry was whether the venirepersons believed Defendant waived his right to use a firearm for self-defense because of his prior felony conviction. The question then changed to whether the venirepersons would automatically disbelieve Defendant if he used a firearm for self-defense. The question changed again to whether the venirepersons would not consider self-defense if Defendant, as a felon, was not supposed to have a gun. None of these questions directly asked the venirepersons whether they would refuse to follow an instruction from the court that Defendant was permitted to use a firearm for self-defense.

8

Second, that critical question was directly posed to the entire venire by the trial court when it asked:

> If I give you an instruction that – and I think [defense counsel] has already, basically, acknowledged that his client has a felony, or at least he expects that's going to be the evidence, that he has a felony – as a felon, he has a right to defend himself, and it lays out the elements that you have to find and believe, are you going to be able to follow the instructions and the evidence you are to hear even though you might personally believe that a felon can never possess a firearm to defend themselves?  Or are you going to sit there and go, "Nope.  No felon can ever have a firearm.  No self-defense"?  So are you going to follow my instructions?  Is there anyone here that will not follow my instructions?

When the trial court asked this question, 10 venirepersons raised their hands.  They were all stricken for cause.  Venirepersons 14, 24, 43 and 46 did not raise their hands.  Their silence in response to this direct question from the trial court constituted an unequivocal assurance of impartiality for the purpose of rehabilitation.  *See* ***State v. Garrison***, 276 S.W.3d 372, 377 (Mo. App. 2009).

After reviewing the entire *voir dire* examination, we conclude that the trial court did not clearly abuse its broad discretion by denying the request to strike venirepersons 14, 24, 43 and 46 for cause.  Points 1-3 are denied.

*Point 4*

In Point 4, Defendant contends the trial court plainly erred by imposing a 12-year sentence on each ACA conviction.  This point arises from the following facts.

As noted above, each ACA count in the third amended information alleged that the minimum sentence was imprisonment for 10 years without eligibility for parole because Defendant already had two ACA convictions.  Before the trial commenced, the prosecutor offered Exhibit 1, which was a certified copy of Defendant's February 17, 1987, convictions in Greene County, Missouri.  The exhibit showed that Defendant pled guilty

9

to one count of first-degree assault, one count of kidnapping, and two counts of ACA. The first ACA count alleged that Defendant committed that offense by using a dangerous instrument to stab Roy Tooley on March 1, 1986. The second ACA count alleged that Defendant used a dangerous instrument during his kidnapping of Etta Spradling on March 1 and 2, 1986. The trial court admitted the exhibit and found beyond a reasonable doubt that Defendant was a prior offender.[4] After examining Exhibit 1, the court also found beyond a reasonable doubt that Defendant had two prior ACA convictions. The court noted that it was not required to decide the minimum-sentence issue at that time.

After the case at bar was submitted to the jury, Defendant was found guilty of all six counts charged in the third amended information. At the sentencing hearing, the prosecutor recommended that the court impose: (1) maximum seven-year sentences on the class D felonies in Counts 1, 3 and 6; (2) a 25-year sentence for each unclassified ACA conviction in Counts 2 and 4; and (3) the maximum four-year sentence for the class E felony in Count 5. Defense counsel argued that the ACA convictions required a 10-year minimum without eligibility for parole, and that concurrent sentences on those counts were appropriate. As noted previously, the court sentenced Defendant to maximum seven-year sentences on Counts 1 and 3; the maximum four-year sentence on Count 5; 12-year sentences on Counts 2 and 4; and a six-year sentence on Count 6, with that sentence to be served consecutively to all other counts.

In Point 4, Defendant contends the trial court plainly erred by imposing the 12-year sentences on the ACA convictions in Counts 2 and 4. According to Defendant, the court

---

[4] Based on that finding, the judge would sentence Defendant upon conviction, rather than allowing the jury to recommend a sentence. *See* § 557.036.4(2); ***State v. Libertus***, 496 S.W.3d 623, 631 (Mo. App. 2016).

10

misinterpreted § 571.015 to require a 10-year minimum sentence for those counts, based on Defendant's two ACA convictions in 1987. According to Defendant, because the two prior ACA convictions were part of the same occurrence and did not happen at separate times, § 571.015 did not require a 10-year minimum sentence.

Defendant concedes that this issue is not preserved. Generally, appellate courts do not review unpreserved issues. *See* **State v. Brandolese**, 601 S.W.3d 519, 525-26 (Mo. banc 2020). Rule 30.20 gives appellate courts the discretion to review unpreserved issues involving "plain errors affecting substantial rights … when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." **Id**. An appellate court should not engage in plain error review "unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." **Brandolese**, 601 S.W.3d at 525-26 (internal quotation marks and citation omitted).

Based on our review of the record, we decline to engage in plain error review because Defendant has failed to facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice resulted from the trial court imposing a 12-year sentence on each ACA conviction. The implicit premises of Defendant's argument are that: (1) the trial court intended to impose the minimum sentences for the ACA convictions; and (2) the trial court incorrectly believed the minimum permissible sentence was 10 years on each count. Neither premise is supported by the record.

The offense of ACA in § 571.015 is an unclassified felony. **State v. McKenzie**, 599 S.W.3d 269, 275 (Mo. App. 2020). As our Supreme Court explained in **State v. Clark**, 197 S.W.3d 598 (Mo. banc 2006):

> [A]n individual convicted of armed criminal action shall be punished by imprisonment by the department of corrections and human resources for a

term of not less than three years. The statute specifies a minimum sentence of three years but does not state a maximum penalty. The absence of a stated maximum penalty merely indicates a legislative intent that a defendant convicted of the offense may be sentenced to any term of years above the minimum, including life. Since Clark was sentenced to life imprisonment on the assault count, 30 years on the armed criminal action count, and 15 years on the attempted robbery count, all the sentences were within the original unenhanced range of punishment.

*Id*. at 602 (internal citations omitted). Thus, the trial court's imposition of a 12-year sentence for each ACA conviction was within the permissible unenhanced range of punishment for a first offense alone. *See* § 571.015. Based on our review of the sentencing transcript, there is no indication that the trial court intended to impose the minimum required sentence for an ACA conviction, or believed the minimum required sentence for each was 10 years. The trial court imposed the maximum permissible sentences on Counts 1, 3 and 5. The six-year sentence on Count 6 was almost the maximum permitted. The 12-year sentences imposed by the trial court for the ACA offenses was more than defense counsel recommended and less than the prosecutor recommended. Moreover, a mistaken belief by the trial court about the acceptable sentencing range requires resentencing only when the sentence imposed was based on that mistaken belief. *See **State v. Perry***, 548 S.W.3d 292, 301 (Mo. banc 2018); ***State v. Pierce***, 548 S.W.3d 900, 904 (Mo. banc 2018). The transcript does not demonstrate that this occurred. We decline to grant plain error review, so Point 4 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, C.J./P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCUR

DON E. BURRELL, J. – CONCUR